| | | |
|---|---|---|
| **TROY WILLIAMS** | * | IN THE UNITED STATES |
| 1422 Edison Highway | | |
| Baltimore, Maryland 21213 | * | DISTRICT COURT FOR |
| | * | THE DISTRICT OF MARYLAND, |
| *Plaintiff,* | * | |
| | * | BALTIMORE DIVISION |
| v. | * | |
| **MAYOR AND CITY COUNCIL** | * | |
| **OF BALTIMORE CITY** | | |
| 100 North Holiday Street | * | *JURY TRIAL DEMANDED* |
| Baltimore, Maryland 21202 | | |
| | * | |
| *Serve on:* | | |
| George Nilson | * | |
| 100 North Holiday Street | | |
| Baltimore, Maryland 21202 | * | |
| and | * | |
| **STEPHANIE RAWLINGS-BLAKE**, | * | |
| in her capacity as Mayor of | | |
| the City of Baltimore | * | |
| City Hall, Room 250 | | |
| 100 North Holiday Street | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| *Serve on:* | | |
| George Nilson | * | |
| 100 North Holiday Street | | |
| Baltimore, Maryland 21202 | * | |
| and | * | |
| **THE BALTIMORE CITY** | * | |
| **POLICE DEPARTMENT** | | |
| 601 East Fayette Street | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| *Serve on:* | | |
| Chief, Legal Counsel | * | |
| 242 West 29th Street | | |
| Baltimore, Maryland 21211 | * | |
| and | * | |
| | * | |
| | * | |

**ANTHONY BATTS**, Commissioner,          *
in his official capacity,
Baltimore City Police Department          *
601 East Fayette Street
Baltimore, Maryland 21202                 *

     *Serve on:*                          *
     Chief, Legal Counsel
     242 West 29th Street                *
     Baltimore, Maryland 21211
                                         *
and
                                         *

**BRIAN FLYNN**, Police Officer,
in his individual and official capacity    *
Baltimore City Police Department
601 East Fayette Street                    *
Baltimore, Maryland 21202
                                         *
     *Serve on:*
     Chief, Legal Counsel                *
     242 West 29th Street
     Baltimore, Maryland 21211           *

and                                        *

**DANE HICKS**, Police Officer,            *
in his individual and official capacity
Baltimore City Police Department          *
601 East Fayette Street
Baltimore, Maryland 21202                 *

     *Serve on:*                          *
     Chief, Legal Counsel
     242 West 29th Street                *
     Baltimore, Maryland 21211
                                         *
     *Defendants*.                 Case Number: _____
                                         *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT

### INTRODUCTION & NATURE OF THE ACTION

> I can remember – when I was a commander in the Eastern District and I had – they call them 'jump out boys'…Narcotic, plain clothes guys…And I had a black female detective who was – worked with them - she was part of that crew, come to me and she was crying… I said, 'What's wrong?' She says, 'I watched my African American partner use the N-word more than I have ever heard, over and over again, while slamming down some African American kids where it didn't take all that…and he was very comfortable with it.'[1]

> - *Lieutenant Colonel Melvin Russell,*
> Baltimore City Police Department

1.      Look closely at the incidents of police brutality and corruption in Baltimore City and you will often see them connected to specialty units like the "flex squads," "knockers," or "jump out boys," so named because the officers tend to jump out of cars and aggressively pursue their targets. This, however, it not news to anyone in the Baltimore City Police Department or the Mayor's Office. "These specialty units were tasked with moving into high-crime areas and rapidly lowering crime rates…as instruments of the 'at any cost' school of policing, where success is measured by the number of arrests made or the amount of contraband seized – by meeting often unrealistic statistical targets imposed from on high."[2]

2.      It is also not news to anyone in the Baltimore City Police Department or the Mayor's Office that officers are free to make false arrests and manipulate evidence without fear of meaningful punishment or reprimand because their supervisors control their punishments, and there is a pattern, practice, and/or policy and custom within the Baltimore City Police Department of not punishing officers' misconduct or providing meaningful reprimand, many times involving back-door deals:

### Former City Official: Police Dept. Full of Corruption Baltimore –

The former chief of the Baltimore City Police Department Internal Disciplinary System said the department is rife with corruption and turns a blind eye to bad officers patrolling the streets.

---

[1] Melvin Russell, *Racial Differences in Arrests: Are Community-Police Partnerships a Solution*, Open Society

[2] Justin Peters, *Do arrest Quotas Encourage Police Officers to Break the Law*, http://www.slate.com/blogs/crime/2013/03/15/kendell_richburg_baltimore_police_do_arrest_quotas_encourage_cops_to_break.html; March 15, 2013.

[Joann] Branche said good police officers are in the crosshairs of the department while bad ones are running willy-nilly in the city, undermining public safety.

There were, in fact, back-door deals in punishment. There were instances where recommendations for punishment were not followed. In fact, there were cases that should be punished that were dismissed.[3]

3.      Unsurprisingly, there is "no doubt in [Lieutenant Russell's] mind that [the officer the 'black female detective' was trying to report is] still runnin' around, still abusin' community members. Probably still loggin' complaints."[4]

4.      On July 22, 2011, and consistent with the policies, customs, and/or patterns and practices of the Baltimore City Police Department, specifically the policies, customs, and/or patterns and practices in the Eastern District, where Lieutenant Russell was stationed at the time of his conversation with the "black female detective," the Plaintiff, Troy Williams, was maliciously attacked and kidnapped in front of a number of bystanders at the Greater Gethsemane Baptist Church (*hereinafter,* the "Church"). But neither Mr. Williams nor the bystanders could call those who 'protect and serve' for help because the perpetrator was none other than a Baltimore City Police Department officer, Defendant Brian Flynn, who, upon information and belief, was a member of a specialty unit assigned to the Eastern District of Baltimore City, which, upon information and belief, has since been disbanded by Defendant Commissioner Anthony Batts following the overwhelming amount of pressure he received from the Baltimore City Council and concerned citizens.

5.      Adding insult to Mr. Williams' injuries, he had gone to the Church to attend his childhood friend Mike Robinson's funeral. Realizing after he entered the Church that he had arrived early, Mr. Williams exited the Church and made it down the steps leading to the sidewalk abutting Preston Street when John Doe # 1 drove an unmarked Baltimore City Police Department cruiser in Mr. Williams' direction. Defendant Flynn jumped out of the John Doe #1's unmarked cruiser and ran at Mr. Williams. Without legal cause, justification, or excuse, Defendant Flynn began aggressively touching Mr. Williams' body. Then, Defendant Flynn swung his left fist at Mr. Williams' head. Mr. Williams was able to move out of the way. Then, Defendant Flynn swung his Baltimore City Police Department radio that he held in his right hand at Mr. Williams' head. This time, Mr. Williams was hit directly on top of his head and lost consciousness.

---

[3] WBALTV.com, *Former City Official: Police Dept. Full Of Corruption* (July 2, 2009).
[4] Melvin Russell, *supra.*

6.     When Mr. Williams regained consciousness, he was laying in front of the Church on his stomach, with his face resting on the sidewalk in a pool of his blood and mechanical restraints on his wrists, which had been forced behind his back.

7.     Mr. Williams did not resist, obstruct, interfere, or disobey Defendant Flynn. Though, even assuming, *arguendo*, that he had, Defendant Flynn still would not have had legal cause, justification, or excuse to brutally attack Mr. Williams.  Regardless of where or who Baltimore City Police Officers are policing, brutality can never be tolerated by the Baltimore City Police Department, private citizens, or this Honorable Court.

8.     Mr. Williams deserves redress for the Defendants' acts that deprived him of his rights secured under federal law, including the United States Constitution. For the foregoing, but also because the Defendants willfully refused to prevent such depravations and denials, causing Mr. Williams to needlessly suffer at the hands of Defendant Flynn.

9.     Beyond compensating Mr. Williams for the brutal attack, application of mechanical restraints, false arrest and false imprisonment, and the corresponding deprivations of his rights and interests that occurred before, during, and thereafter, he seeks redress for the unlawful municipal policies, customs, and/or patterns and practices followed by Defendant Flynn in violating his rights and interests giving rise to the extreme misconduct underlying this Complaint.

### *PARTIES*

## I.     THE PLAINTIFF

10.     At all times herein pertinent, the Plaintiff, Troy Williams, is and was a resident of the State of Maryland and a citizen of the United States of America.

## II.     THE DEFENDANTS

### A.     THE CITY OF BALTIMORE

11.     That at all times herein pertinent, the Defendant, Mayor and City Council of Baltimore City (*hereinafter,* the "City of Baltimore"), was and is a municipal corporation, organized and existing under the laws of the State of Maryland. In this respect, the City of Baltimore acted through its agents, employees and servants, who were the policy makers for the Baltimore City Police Department, and held responsibility for the conduct of the police officers employed by the Baltimore City Police Department.

12.     Defendant Stephanie Rawlings-Blake has been, from February 4, 2010 through the present, the Mayor of the City of Baltimore. As Mayor of the City of Baltimore, Defendant Rawlings-Blake acted under color of law in overseeing the Baltimore City Police Department and

introducing police policies, customs, and/or patterns and practices that encouraged and required unlawful, physically aggressive policing. Defendant Rawlings-Blake failed to act to ensure that these unconstitutional practices ceased. Defendant Rawlings-Blake is being sued in her individual and official capacity.

**B.**     **THE BALTIMORE CITY POLICE DEPARTMENT**

13.     At all times herein pertinent, the Defendant, Baltimore City Police Department, was and is an agency of the State of Maryland, but otherwise a local government under Maryland Code Annotated, Courts and Judicial Proceedings, § 5-301(d)(21) and is subject to suit under 42 U.S.C. § 1983.

14.     The Defendant, Commissioner Anthony Batts, is the Commissioner of the Baltimore City Police Department. The Commissioner is charged with functioning as the Chief of Police and Executive Officer of the Baltimore City Police Department. In directing and supervising the operations and affairs of the Baltimore City Police Department, the Commissioner is vested with all the powers, rights, and privileges attending the responsibility of management and may exercise the same, where appropriate, by rule, regulation, order or other departmental directive, which shall be binding on all members of the Baltimore City Police Department. The authority and responsibility vested in the Commissioner includes, but is not limited to: (1) the appointment of deputy commissioners to serve at his pleasure, and other ranks and positions above the rank of captain for the purpose of ensuring effective and efficient staffing and operation of the major functional subdivisions of the Baltimore City Police Department; (2) the determination and establishment of classifications of ranks, grades and positions for police officers within the Baltimore City Police Department; (3) to determining and designating the authority, responsibility, duties, assignments, rights and privileges of each rank, grade or position, and to establish the order of succession to positions of command within the Baltimore City Police Department; (4) regulating attendance, conduct, training, discipline and procedure for all members of the Baltimore City Police Department and to make other rules, regulations and orders as may be necessary for the good governance of the Baltimore City Police Department and its members; and (5) suspending, amending, rescinding, abrogating or canceling any rule, regulation, order or other departmental directive adopted by him or any former police commissioner, and to adopt all other reasonable rules, regulations and orders as he may deem necessary to enable the Baltimore City Police Department to effectively discharge its duties.  Defendant Batts  is being sued in his individual and official capacity.

15.     That at all times herein pertinent, the Defendant, Brian Flynn, was a police officer of the Baltimore City Police Department, and was acting in such a capacity as an agent, servant, and employee of the Baltimore City Police Department, and was acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, Defendant Flynn acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to his authority as a police officer of the Baltimore City Police Department. Defendant Flynn is being sued in his individual and official capacity.

16.     That at all times herein pertinent, the Defendant, Dane Hicks, was a police officer of the Baltimore City Police Department, and was acting in such a capacity as an agent, servant, and employee of the Baltimore City Police Department, and was acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, Defendant Hicks acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to his authority as a police officer of the Baltimore City Police Department. Defendant Hicks is being sued in his individual and official capacity.

17.     That at all times herein pertinent, John and Jane Does 1-20, members of the Baltimore City Police Department, are being referenced by fictitious names by virtue of the Plaintiff's current ignorance as to their true names. John and Jane Does 1-20, police officers of the Baltimore City Police Department, were acting in such a capacity as agents, servants, and employees of the Baltimore City Police Department, and were acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, John and Jane Does 1-20 acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to their authority as  police officers' of the Baltimore City Police Department.

18.      That at all times herein pertinent, Richard and Jane Roes 1-20, supervisory officials of the Baltimore City Police Department and its officers, are being referenced by fictitious names by virtue of the Plaintiff's current ignorance as to their true names.   Richard and Jane Roes 1-20, supervisory officials, some within the Baltimore City Police Department, were acting in such

a capacity as agents, servants, and employees of the State of Maryland, City of Baltimore, and/or the Baltimore City Police Department, and were acting under the direction and control of the State of Maryland, the City of Baltimore, and/or the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the State of Maryland, the City of Baltimore, and/or the Baltimore City Police Department. Additionally, at all times referred to herein, Richard and Jane Roes 1-20 acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to their authority as  supervisors of the Baltimore City Police Department and its officers.

## JURISDICTION AND VENUE

19.     This action arises under the Constitution to the United States; 42 U.S.C. § 1983; and 42 U.S.C. § 1988(b).

20.     This Court has original jurisdiction over Mr. Williams' federal law claims, including claims arising under the Constitution of the United States of America, pursuant to 28 U.S.C. § 1943 and 28 U.S.C. § 1331.

21.     Under 28 U.S.C. § 1391(b)(1) and (2), venue is appropriate in the United States District Court, Baltimore Division, because the Baltimore Division is (1) a judicial district where at least one Defendant resides and all Defendants reside in the State of Maryland, and (2) it is the judicial district in which all the events and omissions giving rise to Mr. William's Complaint occurred.

## *ALLEGATIONS COMMON TO ALL CLAIMS*

**I.      THE PLAINTIFF FILED A COMPLAINT AGAINST JOHN DOE #1 AFTER WITNESSING HIM BRUTALLY ATTACK AN UNKNOWN MAN.**

22.     On or about June 24, 2011, after a long day of work, Mr. Williams stopped at the M & M Lounge, located at 2500 East Biddle Street, Baltimore, Maryland 21213, to get a six pack of beer. While Mr. Williams was at the M & M Lounge, there was a raid by the Baltimore City Police Department.

23.     Mr. Williams was neither the intended target of the raid nor was he charged with the commission of any crimes arising out of the raid. However, like many of the other patrons who were at the M & M Lounge that night, Mr. Williams was arrested and forced against his will to spend the night in a jail cell courtesy of the Baltimore City Police Department.

24.     While Mr. Williams was in the aforementioned jail cell with the other patrons from the M & M Lounge, he observed John Doe #1 enter the jail cell and brutally attack an unknown man that had also been at the M & M Lounge.

25.     The unknown man was afraid to file a complaint against John Doe # 1. So, being the conscientious and proactive person he is, upon being released the next morning, Mr. Williams filed a complaint with the Baltimore City Police Department that detailed the brutal attack upon the unknown man that Mr. Williams had witnessed the night before.

26.     What the Defendants did not know at the time John Doe #1 attacked the unknown man or at the time Mr. Williams filed a complaint detailing John Doe #1's brutal attack of the unknown man, is that Mr. Williams is Lieutenant Colonel Melvin Russell's cousin. And at the time John Doe #1 attacked the unknown man, Lieutenant Russell was one of John Doe #1 and Defendant Brian Flynn's  superior officers.

27.     On or about July 1, 2011, Mr. Williams, speaking with Lieutenant Russell, communicated that a week before he had witnessed John Doe #1 brutally attack an unknown man and that he had filed a corresponding complaint with the Baltimore City Police Department, Eastern District. In response, Lieutenant Russell communicated to Mr. Williams that he was unaware of the aforementioned complaint and that it must not have been given to him. Lieutenant Russell also communicated that he would get to the bottom of what happened to the unknown man and Mr. Williams' complaint.

## II.     THE PLAINTIFF GOT BRUTALLY ATTACKED AT HIS FRIEND MIKE ROBINSON'S FUNERAL, WHICH WAS BEING HELD AT THE GREATER GETHSEMANE BABTIST CHURCH.

28.     On or about July 22, 2011, Mr. Williams walked from a friend's house on Milton Avenue to Preston Street to attend his friend Mike Robinson's funeral at the Church.

29.     Mr. Williams climbed the steps in front of the Church and upon passing through the glass double doors and entering the foyer, he realized that he had arrived early. He turned around, exited through the same glass doors, and started down the same steps that he had climbed just a few moments earlier. When he was about half-way down the steps,  his friend, Shelly Thornton, called to him from across the street. As Mr. Williams continued down the steps, he responded to Ms. Thornton that he was going to continue their conversation while he waited for the funeral to begin.

30.     As  Mr. Williams stepped off the Church's steps and onto the sidewalk abutting Preston Street, John Doe # 1 drove an unmarked Baltimore City Police Department cruiser in Mr. Williams' direction. Defendant Flynn jumped out of the John Doe #1's unmarked cruiser and ran at

Mr. Williams. Without legal cause, justification, or excuse, Defendant Flynn began aggressively touching Mr. Williams' body. Then, Defendant Flynn swung his left fist at Mr. Williams' head. Mr. Williams was able to move out of the way. Then, Defendant Flynn swung his Baltimore City Police Department radio that he held in his right hand at Mr. Williams' head. This time, Mr. Williams was hit directly on top of his head and lost consciousness.

31.     When Mr. Williams regained consciousness, he was laying on his stomach with his face resting on the sidewalk in a pool of his blood and mechanical restraints on his wrists, which had been forced behind his back.

## III.   DEFENDANT FLYNN REALIZED A CROWD HAD GATHERED AND THAT THERE WERE NOW WITNESSES TO HIS TARGETED BRUTAL ASSAULT ON THE PLAINTIFF.

32.     Defendant Flynn had seen Mr. Williams exit the Church and that is all that Defendant Flynn saw of Mr. Williams on July 22, 2011. Defendant Flynn's brutal assault on Mr. Williams, however, was not motivated by what Defendant Flynn saw or did not see on July 22, 2011. It was in retaliation for Mr. Williams' previous complaint of a brutal assault by John Doe # 1 on the unknown man.

33.     A currently unknown female Baltimore City Police Department officer, Jane Doe # 1, then arrived. Upon alighting from her Baltimore City Police Department cruiser, Jane Doe # 1 recognized Mr. Williams as a family friend and informed Defendant Flynn that Mr. Williams is Lieutenant Russell's cousin.

34.     In what could have only have been an effort to save face, Defendant Flynn asked Mr. Williams "where it was," never defining "it" or trying to. Again, the brutal attack wasn't about "it" or whatever "it" was supposed to be. It was about punishing Mr. Williams and retaliating against him for previously making a complaint on behalf of the unknown man and then reporting it to Lieutenant Russell.

35.     Mr. Williams called out across the street to Ms. Thornton to call his brother-in-law and to tell him to relay to Lieutenant Russell what had just happened.

## IV.   THE PLAINTIFF WAS TAKEN TO JOHNS HOPKINS' EMERGENCY ROOM AND THEN TO JAIL.

36.     Following the realization that Mr. Williams is Lieutenant Russell's cousin, Defendant Flynn threw Mr. Williams in the backseat of John Doe # 1's cruiser and took him to Johns Hopkins' Emergency Room to have the area where Defendant Flynn hit him with his radio and his associated injuries examined, and to fabricate evidence in Mr. Williams' medical records.

37.     A currently unknown police officer from the Internal Affairs Division of the Baltimore City Police Department met Mr. Williams at Johns Hopkins' Emergency Room and verified with the attending physician that the trauma to Mr. Williams' head was inflicted by Defendant Flynn's radio.

38.     Mr. Williams' scalp was thereafter closed with surgical staples and he was discharged from the care of Johns Hopkins Emergency Room and taken to Central Booking and Intake Center to be processed into jail, but not before Defendant Flynn instructed the Johns Hopkins Emergency Room staff to note in Mr. Williams' file that Mr. Williams is addicted to heroin, which is a pattern, practice, and/or policy and custom within the Baltimore City Police Department that is utilized by police officers after they have brutally attacked so-called suspects. Mr. Williams is not a heroin addict and Defendant Flynn had no reason to believe that Mr. Williams was a heroin addict.

## V.     THE PLAINTIFF'S FALSE ARREST AND FALSE IMPRISONMENT.

39.     Mr. Williams was accosted and attacked at the Church where he was waiting for his good friend's funeral to begin. It is hard to imagine a more horrid thing to do than attack a man coming out of a church, let alone a man at a church to attend a good friend's funereal. However, in an effort to justify Defendant Flynn's brutal attack, Mr. Williams  was falsely charged with possession of a controlled dangerous substance.

40.     Unsurprisingly, however, there was never any controlled dangerous substance recovered by Defendant Flynn, Defendant Hicks, or any other Baltimore City Police Department officer and the State's Attorney's Office correspondingly entered a *nolle prosequi* in the District Court for Baltimore City, criminal case number 3B02130194.

*CAUSES OF ACTION*
*Federal Claims*

**COUNT ONE**
**Violations of 42 U.S.C. § 1983 – Municipal Liability**
*(The City of Baltimore and the Baltimore City Police Department)*

41.     Each of the paragraphs of this Complaint are incorporated by Mr. Williams as if restated fully herein.

42.     That at all times relevant to this Complaint, the Baltimore City Police Department and its personnel were acting under the direction and control of the City of Baltimore, which acted by and through its agents and employees who were responsible for making the policies for the Baltimore City Police Department, its officers, and operations. The Baltimore City Police Department personnel named in this Complaint were acting either pursuant to official policy or the practice, custom, or usage of the City of Baltimore and/or the Baltimore City Police Department, a final decision by a policy maker, or as a result of deliberate indifference toward training or supervision.

**I.     *MONELL* CLAIM AGAINST THE CITY OF BALTIMORE AND THE BALTIMORE CITY POLICE DEPARTMENT FOR UNCONSTITUTIONAL POLICIES, CUSTOMS, AND/OR PATTERNS AND PRACTICES**

43.     At the time of the conduct complained of herein, the City of Baltimore, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring officers to fabricate evidence, make arrests without probable cause or legal justification, and to falsely imprison Baltimoreans.

44.     At the time of the conduct complained of herein, the City of Baltimore, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns and practices encouraging and requiring its police officers to use excessive force without regard for the possibility that they could seriously injure or take a human life where less lethal alternatives exist.

45.     At the time of the conduct complained of herein, the City of Baltimore, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring its police officers to intimidate civilians with unlawful physical force.

46.     The final policy makers of the City of Baltimore and the Baltimore City Police Department had actual or constructive knowledge of these unconstitutional policies, customs, and/or patterns and practices, yet failed to take any reasonable or adequate steps to remedy them.

47.     These policies, customs, and/or patterns and practices led the Baltimore City Police Department and its personnel to believe that this misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated, receive meaningful reprimand, or punishment.

48.     These policies, customs, and/or patterns, and practices made it reasonably foreseeable that the Baltimore City Police Department and its personnel, including those named in this Complaint, would violate peoples' constitutional rights in precisely the manner that Mr. Williams' rights were violated, and the City of Baltimore and the Baltimore City Police Department, through their respective final policy makers, were deliberately indifferent to this risk.

49.     These policies, customs, and/or patterns and practices were the moving force behind the denials of Mr. Williams' rights including, but not limited to, the right to be free from being falsely arrested and falsely imprisoned.

50.     Additionally, these policies, customs, and/or patterns and practices implicitly or explicitly encourage the Baltimore City Police Department and its personnel to be more aggressive and use unlawful and/or unjustifiable force with Baltimoreans.

51.     As a result of the unconstitutional policies, customs, and/or patterns and practices, Defendant Flynn brutally attacked Mr. Williams and, thereafter, Defendant Flynn and Defendant Hicks falsely arrested and imprisoned Mr. Williams, causing him to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of the Fourth and Fourteenth Amendments of the U.S. Constitution.

## II.     *MONELL* CLAIM AGAINST THE CITY OF BALTIMORE AND THE BALTIMORE CITY POLICE DEPARTMENT FOR UNCONSTITUTIONAL DISCIPLINE, TRAINING, AND SUPERVISION

52.     At all times herein pertinent, the City of Baltimore and the Baltimore City Police Department had policies, customs, and/or patterns and practices of failing to properly discipline, train, and supervise the Baltimore City Police Department and its personnel, including the members of the Baltimore City Police Department named in this Complaint, in the proper application of force when around civilians and when it is appropriate to use force at all, and that it is illegal to fabricate evidence or initiate criminal proceedings in an effort to  justify the assault of a civilian. To-wit, the City of Baltimore failed to ensure that the Baltimore City Police Department and its personnel would conduct themselves in accordance with the United States Constitution and applicable State of Maryland laws when accosting civilians and/or initiating criminal charges against civilians.

53.     At all times herein pertinent, the City of Baltimore had policies, customs, and/or patterns and practices of failing to properly discipline, train, and supervise the Baltimore City Police Department and its personnel, including the members of the Baltimore City Police Department named in this Complaint, about the unlawful and/or unjustifiable use of force upon civilians and the fabrication of evidence, and failed to ensure that the Baltimore City Police Department and its personnel would conduct themselves in accordance with the United States Constitution and applicable State of Maryland law when interacting with the public and/or apprehending and/or charging a suspect with a crime.

54.     The final policymakers of the Baltimore City Police Department had actual or constructive knowledge of these unconstitutional practices yet failed to take any reasonable or adequate steps to remedy them. In fact, the inappropriate use of force and the fabrication of evidence after the unlawful and/or unjustifiable use of force occur so frequently that they have become the accepted procedure by the Baltimore City Police Department and its personnel.

55.     Acting under the color of law, by and through the policy makers of the Baltimore City Police Department and pursuant to official policy, customs, and/or patterns and practices, the City of Baltimore and the Baltimore City Police Department intentionally, knowingly, recklessly, or with deliberate indifference to the rights of its visitors and inhabitants failed to instruct, supervise, control, and/or discipline the members of the Baltimore City Police Department and its personnel in the performance of their duties.

56.     These policies, customs, and/or patterns and practices led the named members of the Baltimore City Police Department to believe that misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated, receive meaningful reprimand, or punishment.

57.     This pattern made it foreseeable that the Baltimore City Police Department and its personnel, including those named to this Complaint, would violate peoples' constitutional rights, in precisely the manner Mr. Williams' rights were violated, and the City of Baltimore and the Baltimore City Police Department, through their final policy makers, were deliberately indifferent to this risk. In fact, had the Baltimore City Police Department diligently exercised its duties to instruct, supervise, control, and discipline, on a continuing basis as heretofore alleged, it could have prevented or could have aided in preventing the commission of said wrongs and intentionally, knowingly, and with deliberate indifference to visitors and inhabitants of the City of Baltimore, refused to do so.

58.     These policies, customs, and/or patterns and practices of the City of Baltimore and the Baltimore City Police Department, as described more fully in the body of this Complaint, were the moving force behind Defendant Flynn's brutal attack on Mr. Williams, Mr. Williams' subsequent false arrest and incarceration, and the fabricated justification therefor as described more fully in the body of this Complaint.

59.     As a result of the City of Baltimore and the Baltimore City Police Department's failure to supervise, discipline, and train the Baltimore City Police Department and its personnel, including those police officers named in this Complaint, Mr. Williams was denied his constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, false arrest, and false imprisonment, and was caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations the Fourth and Fourteenth Amendments of the U.S. Constitution.

## COUNT TWO
### Violation of Fourth and Fourteenth Amendment Rights
### under 42 U.S.C. § 1983 – Supervisory Violations
*(Stephanie Rawlings-Blake and Anthony Batts)*
***In their individual and official capacities***

60.     Each of the paragraphs of this Complaint are incorporated by Mr. Williams as if restated fully herein.

61.     The Count Two Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

62.     That the Count Two Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

63.     That at all times herein pertinent, the Count Two Defendants were acting in the capacity of supervisors to the Baltimore City Police Department and its personnel. As supervisors, the Count Two Defendants were responsible for the training, instruction, supervision, discipline, and control of the police officers employed by the Baltimore City Police Department, including the police officers named in this Complaint.

64.     Upon information and belief, the Count Two Defendants received complaints about the conduct of the police officers with the Baltimore City Police Department, including those police officers named in this Complaint, or in the exercise of due diligence would have perceived that the police officers, especially those named in this Complaint, had exhibited conduct or disciplinary problems that posed a pervasive and unreasonable risk of harm to civilians like Mr. Williams.

65.     The Count Two Defendants knew or in the exercise of due diligence would have known that the conduct displayed from the police officers with the Baltimore City Police Department that are named in this Complaint was likely to occur.

66.     The Count Two Defendants failed to take any preventative or remedial measures to guard against the conduct of the police officers with the Baltimore City Police Department that are named in this Complaint. The failure of the Count Two Defendants amounted to gross negligence, deliberate indifference, or deliberate misconduct, which directly caused the deprivations of the constitutional rights suffered by Mr. Williams. The Count Two Defendants failed to train, instruct, supervise, and discipline the police officers with the Baltimore City Police Department named in this Complaint, and the other police officers of the Baltimore City Police Department, and said failure caused Mr. Williams' damages.

67.     As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Two Defendants, Mr. Williams was denied his constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force and the right to be free from false arrest and false imprisonment, and was caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of the Fourth and Fourteenth Amendments of the U.S. Constitution.

### COUNT THREE
**Violation of Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 – Excessive Use of Force**
*(Brian Flynn)*
***In his individual and official capacity***

68.     Each of the paragraphs of this Complaint are incorporated by Mr. Williams as if restated fully herein.

69.     The Count Three Defendant is a "person," as that term is used in the text of 42 U.S.C. § 1983.

70.     That the Count Three Defendant was acting under the color of law in his actions and omissions which occurred at all times relevant to this action.

71.     That the Count Three Defendant engaged in actions that deprived Mr. Williams of his  constitutional right not to be subjected to the use of unreasonable and excessive force.

72.     That the amount of force used by the Count Three Defendant was excessive and would be considered unreasonable by competent police officers presented with the exact same circumstances at the time that the extreme force was used.

73.    That there was no crime at issue, no immediate threat to the safety of the Count Three Defendant, or others, and Mr. Williams was not resisting arrest or attempting to evade arrest by flight. In fact, at the time the Count Three Defendant used excessive force upon Mr. Williams, he was not arrest nor were any of the onlookers – no one at all.

74.    As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Three Defendant, Mr. Williams was denied his constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force and the right to be free from false arrest and false imprisonment,  and was caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of the Fourth and Fourteenth Amendments of the U.S. Constitution.

### COUNT FOUR
**Violation and Conspiracy to Violate Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 – Malicious Prosecution**
*(Brian Flynn and Dane Hicks)*
*In their individual and official capacities*

75.    Each of the paragraphs of this Complaint is incorporated by Mr. Williams as if restated fully herein.

76.    The Count Four Defendants are  "persons," as that term is used in the text of 42 U.S.C. § 1983.

77.    The Count Four Defendants conspired by entering into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of initiating and continuing criminal prosecutions against Mr. Williams on the criminal charge of possession of a controlled dangerous substance. The Count Four Defendants did in fact, under the color of law, initiate and continue criminal prosecutions against Mr. Williams with the criminal charge of possession of a controlled dangerous substance.

78.    The Count Four Defendants commenced and continued the criminal proceedings against Mr. Williams without any belief that he was guilty of the crimes for which he was charged. Additionally, the criminal prosecutions against Mr. Williams were instituted for a purpose other than bringing Mr. Williams to justice or securing the conviction of a guilty person.

79.    There was no probable cause for the criminal prosecution the Count Four Defendants initiated and continued against Mr. Williams and all the charges levied against Mr. Williams were terminated in his favor.

80.     The Count Four Defendants acted intentionally, with actual malice and ill will, and without legal justification, knowingly, willfully, and wantonly evidencing a complete and utter disregard for the truth in instituting legal proceedings against Mr. Williams and evidenced a reckless and callous disregard for, and deliberate indifference to Mr. Williams' constitutional rights.

81.     The Count Four Defendants were motivated in the pursuit of criminal charges against Mr. Williams, not by a belief that the charges had any factual or legal merit or that probable cause for their existence existed, but for improper, illegal, and unconstitutional purposes, including but not limited to, covering up Defendant Flynn's brutal attack upon Mr. Williams.

82.     The conduct of the Count Four Defendants as aforescribed caused Mr. Williams to suffer deprivations to his liberty as his liberty relates to the concept of seizure and violated Mr. Williams' right to be free of unreasonable and unlawful seizure, secured by the Fourth and Fourteenth Amendments to the United States Constitution.

### COUNT FIVE
**Violation and Conspiracy to Violate Fourth and Fourteenth Amendment
Rights under 42 U.S.C. § 1983 – False Arrest / False Imprisonment**
*(Brian Flynn and Dane Hicks)*
***In their individual and official capacities***

83.     Each of the paragraphs of this Complaint is incorporated by Mr. Williams as if restated fully herein.

84.     That the Count Five Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

85.     The Count Five Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of falsely arresting and imprisoning Mr. Williams as alleged more specifically in the body of this Complaint.

86.     That the alleged basis for Mr. Williams' arrest and imprisonment was based on the Count Five Defendants' knowing, deliberate, and reckless disregard for the truth, wherein the Count Five Defendants made false statements and omissions that created falsehoods. Such statements were material and necessary to the finding of probable cause for Mr. Williams' arrest and incarceration. The above-described false arrest and false imprisonment were made and continued under the color of state law and without  a lawful basis and were done in an effort to conceal Defendant Flynn's brutal attack upon Mr. Williams. Further, the Count Five  Defendants

had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Mr. Williams had committed any offense, especially a police officer.

87.     That the Count Five Defendants intentionally arrested Mr. Williams and/or had him arrested with the intention of confining him within fixed boundaries. Additionally, the Count Five Defendants' conduct in arresting and confining Mr. Williams deprived him of his liberty without his consent, probable cause, legal justification, just cause, or any other legally valid reason. Mr. Williams was well aware and conscious of his confinement and the proceedings were terminated completely in his favor.

88.     That based on the actions and inactions described in the body of this Complaint, the Count Five Defendants caused Mr. Williams be falsely arrested and imprisoned, without reasonable or probable cause, and without any right or authority to do so, and charged with possession of a controlled dangerous substance. Further, the arrest was maliciously procured and instigated and caused the false imprisonment, unlawful restraint and detention of Mr. Williams, thereby depriving him of his freedom of movement. This is particularly true because the Count Five Defendants arrested Mr. Williams based on their desire to cover up Defendant Flynn's brutal attack on Mr. Williams and their desire to retaliate against Mr. Williams for filing a complaint against John Doe # 1, and the Count Five Defendants did not and could not produce the controlled dangerous substance that Mr. Williams allegedly possessed.

89.     That the above-described false arrest and false imprisonment was an abuse of the privilege of detention, as the Count Five Defendants acted with actual malice in detaining Mr. Williams without the proper right or legal justification or excuse and with a motive influenced by ill will, hate, and with the purpose of willfully injuring Mr. Williams and others.

90.     The acts and omissions of the Count Five Defendant was the direct and proximate cause of the violation of Mr. Williams' clearly established Fourth and Fourteenth Amendment rights.

### *CLAIMS, DAMAGES, AND JURY DAMAGES*

91.    The actions of the Defendants have deprived Mr. Williams of his civil rights under federal law, including the Fourth and Fourteenth Amendments to the United States Constitution.

92.    The unlawful and reckless acts of the Defendants constituted violations of Mr. Williams' rights under the Constitution of the United States of America , including any innominate tort theory encompassed by the facts pleaded herein.

93.    The unlawful and reckless actions of the Defendants caused Mr. Williams severe emotional distress, humiliation, and embarrassment, pain and suffering, and other damages including, without limitation, damages for lost wages, for which Mr. Williams is entitled to monetary relief.

94.    All acts committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, with actual malice, wantonly, and/or recklessly and said acts meet all of the standards for the imposition of punitive damages.

95.    As a direct and proximate result of these acts, Mr. Williams suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation; indignities and severe embarrassment; degradation; and injury to his reputation.

**WHEREFORE**, the Plaintiff prays as follows:

A.    That the Court will award compensatory damages to the Plaintiff and against the Defendants, jointly and/or severally, in the amount of three million dollars ($ 3,000,000.00), which exceeds any and all jurisdictional requirements of this Court that may exist, and that the City of Baltimore and the Baltimore City Police Department be held liable for the wrongful acts of their employees wherein appropriate;

B.    That the Court award punitive damages to the Plaintiff, and against the Defendants, jointly and/or severally, that will deter such conduct by the Defendants in the future;

C.    For a trial by jury;

D.    For interest on said judgment, recovery of the Plaintiff's costs, including any and all allowable attorney's fees; and

E.    For any and all other relief to which the Plaintiff may be entitled.

Respectfully Submitted,


**LAW OFFICE OF BARRY R. GLAZER, P.C.**


By: _____/s/_____
     Charles H. Edwards IV
     Federal Bar No.: 29977
     P.O. Box 27166
     1010 Light Street
     Baltimore, Maryland 21230
     Phone:  (410) 547-8568
     Fax:     (410) 547-0036
     charles.edwards@robinhoodlawyers.com

     *Counsel for the Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial on all issues and causes of action asserted in the foregoing Complaint.

_____/s/_____
Charles H. Edwards IV
