In the

# United States District Court

# for the District of Maryland

## No. 1:14-cv-01125

**Troy Williams,**

*Plaintiff*

vs.

## Mayor and City Council of Baltimore, *et al*.

*Defendants*

## OMNIBUS OPPOSITION TO MOTION TO DISMISS

***Charles H. Edwards IV***
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568 fax: (410) 547-0036
federal bar number: 29977
*Attorney for the Plaintiff*

## INTRODUCTION

> I can remember – when I was a commander in the Eastern District and I had – they call them 'jump out boys'…Narcotic, plain clothes guys…And I had a black female detective who was – worked with them - she was part of that crew, come to me and she was crying… I said, 'What's wrong?' She says, 'I watched my African American partner use the N-word more than I have ever heard, over and over again, while slamming down some African American kids where it didn't take all that…and he was very comfortable with it.'

> *- Lieutenant Colonel Melvin Russell,*
> Baltimore City Police Department

Look closely at the incidents of police brutality and corruption in Baltimore City and you will often see them connected to specialty units like the "flex squads," "knockers," or "jump out boys," so named because the officers tend to jump out of cars and aggressively pursue their targets.[1] This, however, it not news to anyone in the Baltimore City Police Department or the Mayor's Office.[2] "These specialty units were tasked with moving into high-crime areas and rapidly lowering crime rates…as instruments of the 'at any cost' school of policing, where success is measured by the number of arrests made or the amount of contraband seized – by meeting often unrealistic statistical targets imposed from on high."[3]

It is also not news to anyone in the Baltimore City Police Department or the Mayor's Office that officers are free to make false arrests and manipulate evidence without fear of meaningful punishment or reprimand because their supervisors control their punishments, and there is a pattern, practice, and/or policy and custom within the Baltimore City Police Department of not punishing officers' misconduct or providing meaningful reprimand, many times involving backdoor deals:

> **Former City Official: Police Dept. Full of Corruption**
> **Baltimore** –

> The former chief of the Baltimore City Police Department Internal Disciplinary System said the department is rife with corruption and turns a blind eye to bad officers patrolling the streets.

---

[1] Complaint at ¶ 1.

[2] *Id.*

[3] *Id.*

> [Joann] Branche said good police officers are in the crosshairs of the
> department while bad ones are running willy-nilly in the city, undermining public safety.
>
> There were, in fact, back-door deals in punishment. There were instances where recommendations for punishment were not followed. In fact, there were cases that should be punished that were dismissed.[4]

Unsurprisingly, there is "no doubt in [Lieutenant Russell's] mind that [the officer the 'black female detective' was trying to report is] still runnin' around, still abusin' community members. Probably still loggin' complaints."[5]

On July 22, 2011, and consistent with the policies, customs, and/or patterns and practices of the Baltimore City Police Department, specifically the policies, customs, and/or patterns and practices in the Eastern District, where Lieutenant Russell was stationed at the time of his conversation with the "black female detective," the Plaintiff, Troy Williams, was maliciously attacked and kidnapped in front of a number of bystanders at the Greater Gethsemane Baptist Church (*hereinafter,* the "Church").[6] But neither Mr. Williams nor the bystanders could call those who 'protect and serve' for help because the perpetrator was none other than a Baltimore City Police Department officer, Defendant Brian Flynn, who, upon information and belief, was a member of a specialty unit assigned to the Eastern District of Baltimore City, which, also upon information and belief, has since been disbanded by Defendant Commissioner Anthony Batts following the overwhelming amount of pressure he received from the Baltimore City Council and concerned citizens.[7]

Adding insult to Mr. Williams' injuries, he had gone to the Church to attend his childhood friend Mike Robinson's funeral.[8] Realizing after he entered the Church that he had arrived early, Mr. Williams exited the Church and made it down the steps leading to the sidewalk abutting Preston Street when John Doe # 1 drove an unmarked Baltimore City

---

[4] *Id.* at ¶ 2.

[5] *Id.* at ¶ 3.

[6] *Id.* at ¶ 4.

[7] *Id.*

[8] *Id.* at ¶ 5.

Police Department cruiser in Mr. Williams' direction.[9] Defendant Flynn jumped out of the John Doe #1's unmarked cruiser and ran at Mr. Williams.[10] Without legal cause, justification, or excuse, Defendant Flynn began aggressively touching Mr. Williams' body.[11] Then, Defendant Flynn swung his left fist at Mr. Williams' head.[12] Mr. Williams was able to move out of the way.[13] Then, Defendant Flynn swung his Baltimore City Police Department radio that he held in his right hand at Mr. Williams' head.[14] This time, Mr. Williams was hit directly on top of his head and lost consciousness.[15]

When Mr. Williams regained consciousness, he was laying in front of the Church on his stomach, with his face resting on the sidewalk in a pool of his blood and mechanical restraints on his wrists, which had been forced behind his back.[16]

Mr. Williams did not resist, obstruct, interfere, or disobey Defendant Flynn.[17] Though, even assuming, *arguendo*, that he had, Defendant Flynn still would not have had legal cause, justification, or excuse to brutally attack Mr. Williams.[18] Regardless of where or who Baltimore City Police Officers are policing, brutality can never be tolerated by the Baltimore City Police Department, private citizens, or this Honorable Court.[19]

Mr. Williams deserves redress for the Defendants' acts that deprived him of his rights secured under federal law, including the United States Constitution.[20] For the foregoing, but also because the Defendants willfully refused to prevent such depravations and denials, causing Mr. Williams to needlessly suffer at the hands of Defendant Flynn.[21]

Beyond compensating Mr. Williams for the brutal attack, application of mechanical restraints, false arrest and false imprisonment, and the corresponding deprivations of his rights and interests that occurred before, during, and thereafter, he seeks redress for the unlawful municipal policies, customs, and/or patterns and practices followed by Defendant

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at ¶ 6.

[17] *Id.* at ¶ 7.

[18] *Id.*

[19] *Id.*

[20] *Id.* at ¶ 8.

[21] *Id.*

Flynn in violating his rights and interests giving rise to the extreme misconduct underlying this Complaint.[22]

---

[22] *Id.* at ¶ 9.

### *STATEMENT OF WELL-PLED FACTS*

The well-pled allegations in the Plaintiff's Complaint are to be accepted by this Court as true for the purposes of ruling on the Defendants' Motions to Dismiss.

### *The Plaintiff filed a complaint against John Doe #1 after witnessing him brutally attack an unknown man.*

On or about June 24, 2011, after a long day of work, Mr. Williams stopped at the M & M Lounge, located at 2500 East Biddle Street, Baltimore, Maryland 21213, to get a six-pack of beer.[23] While Mr. Williams was at the M & M Lounge, there was a raid by the Baltimore City Police Department.[24]

Mr. Williams was neither the intended target of the raid nor was he charged with the commission of any crimes arising out of the raid.[25] However, like many of the other patrons who were at the M & M Lounge that night, Mr. Williams was arrested and forced against his will to spend the night in a jail cell courtesy of the Baltimore City Police Department.[26]

While Mr. Williams was in the aforementioned jail cell with the other patrons from the M & M Lounge, he observed John Doe #1 enter the jail cell and brutally attack an unknown man that had also been at the M & M Lounge.[27]

The unknown man was afraid to file a complaint against John Doe # 1.[28] So, being the conscientious and proactive person he is, upon being released the next morning, Mr. Williams filed a complaint with the Baltimore City Police Department that detailed the brutal attack upon the unknown man that Mr. Williams had witnessed the night before.[29]

What the Defendants did not know at the time John Doe #1 attacked the unknown man or at the time Mr. Williams filed a complaint detailing John Doe #1's brutal attack of the unknown man, is that Mr. Williams is Lieutenant Colonel Melvin Russell's cousin.[30]

---

[23] Complaint at ¶ 22.

[24] *Id.*

[25] *Id.* at ¶ 23.

[26] *Id.*

[27] *Id.* at ¶ 24.

[28] *Id.* at ¶ 25.

[29] *Id.*

[30] *Id.* at ¶ 26.

And at the time John Doe #1 attacked the unknown man, Lieutenant Russell was one of John Doe #1 and Defendant Brian Flynn's superior officers.[31]

On or about July 1, 2011, Mr. Williams, speaking with Lieutenant Russell, communicated that a week before he had witnessed John Doe #1 brutally attack an unknown man and that he had filed a corresponding complaint with the Baltimore City Police Department, Eastern District.[32] In response, Lieutenant Russell communicated to Mr. Williams that he was unaware of the aforementioned complaint and that it must not have been given to him.[33] Lieutenant Russell also communicated that he would get to the bottom of what happened to the unknown man and Mr. Williams' complaint.[34]

### The Plaintiff got brutally attacked at his friend Mile Robinson's funeral, which was being held at the Greater Gethsemane Baptist Church.

On or about July 22, 2011, Mr. Williams walked from a friend's house on Milton Avenue to Preston Street to attend his friend Mike Robinson's funeral at the Church.[35]

Mr. Williams climbed the steps in front of the Church and upon passing through the glass double doors and entering the foyer, he realized that he had arrived early.[36] He turned around, exited through the same glass doors, and started down the same steps that he had climbed just a few moments earlier.[37] When he was about half-way down the steps, his friend, Shelly Thornton, called to him from across the street.[38] As Mr. Williams continued down the steps, he responded to Ms. Thornton that he was going to continue their conversation while he waited for the funeral to begin.[39]

As Mr. Williams stepped off the Church's steps and onto the sidewalk abutting Preston Street, John Doe # 1 drove an unmarked Baltimore City Police Department cruiser in Mr. Williams' direction.[40] Defendant Flynn jumped out of the John Doe #1's unmarked

---

[31] *Id.*

[32] *Id.* at ¶ 27.

[33] *Id.*

[34] *Id.*

[35] *Id.* at ¶ 28.

[36] *Id.* at ¶ 29.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at ¶ 30.

cruiser and ran at Mr. Williams.[41] Without legal cause, justification, or excuse, Defendant Flynn began aggressively touching Mr. Williams' body.[42] Then, Defendant Flynn swung his left fist at Mr. Williams' head.[43] Mr. Williams was able to move out of the way.[44] Then, Defendant Flynn swung his Baltimore City Police Department radio that he held in his right hand at Mr. Williams' head.[45] This time, Mr. Williams was hit directly on top of his head and lost consciousness.[46]

When Mr. Williams regained consciousness, he was laying on his stomach with his face resting on the sidewalk in a pool of his blood and mechanical restraints on his wrists, which had been forced behind his back.[47]

### *Defendant Flynn realized that a crowd had gathered and that there were witnesses to his targeted brutal assault on Mr. Williams.*

Defendant Flynn had seen Mr. Williams exit the Church and that is all that Defendant Flynn saw of Mr. Williams on July 22, 2011.[48] Defendant Flynn's brutal assault on Mr. Williams, however, was not motivated by what Defendant Flynn saw or did not see on July 22, 2011.[49] It was in retaliation for Mr. Williams' previous complaint of a brutal assault by John Doe # 1 on the unknown man.[50]

A currently unknown female Baltimore City Police Department officer, Jane Doe # 1, then arrived.[51] Upon alighting from her Baltimore City Police Department cruiser, Jane Doe # 1 recognized Mr. Williams as a family friend and informed Defendant Flynn that Mr. Williams is Lieutenant Russell's cousin.[52]

---

[41] *Id.* at ¶ 30.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.* at ¶ 31.
[48] *Id.* at ¶ 32.
[49] *Id.*
[50] *Id.*
[51] *Id.* at ¶ 33.
[52] *Id.*

In what could have only have been an effort to save face, Defendant Flynn asked Mr. Williams "where it was," never defining "it" or trying to.[53] Again, the brutal attack wasn't about "it" or whatever "it" was supposed to be.[54] It was about punishing Mr. Williams and retaliating against him for previously making a complaint on behalf of the unknown man and then reporting it to Lieutenant Russell.[55]

Mr. Williams called out across the street to Ms. Thornton to call his brother-in-law and to tell him to relay to Lieutenant Russell what had just happened.[56]

**The Plaintiff was taken to Johns Hopkins' Emergency Room and then to jail.**

Following the realization that Mr. Williams is Lieutenant Russell's cousin, Defendant Flynn threw Mr. Williams in the backseat of John Doe # 1's cruiser and took him to Johns Hopkins' Emergency Room to have the area where Defendant Flynn hit him with his radio and his associated injuries examined, and to fabricate evidence in Mr. Williams' medical records.[57]

A currently unknown police officer from the Internal Affairs Division of the Baltimore City Police Department met Mr. Williams at Johns Hopkins' Emergency Room and verified with the attending physician that the trauma to Mr. Williams' head was inflicted by Defendant Flynn's radio.[58]

Mr. Williams' scalp was thereafter closed with surgical staples and he was discharged from the care of Johns Hopkins Emergency Room and taken to Central Booking and Intake Center to be processed into jail, but not before Defendant Flynn instructed the Johns Hopkins Emergency Room staff to note in Mr. Williams' file that Mr. Williams is addicted to heroin, which is a pattern, practice, and/or policy and custom within the Baltimore City Police Department that is utilized by police officers after they have brutally attacked so-called suspects.[59] Mr. Williams is not a heroin addict and Defendant Flynn had no reason to believe that Mr. Williams was a heroin addict.[60]

---

[53] *Id.* at ¶ 34.

[54] *Id.*

[55] *Id.*

[56] *Id.* at ¶ 35.

[57] *Id.* at ¶ 36.

[58] *Id.* at ¶ 37.

[59] *Id.* at ¶ 38.

[60] *Id.*

### *The Plaintiff's false arrest and false imprisonment.*

Mr. Williams was accosted and attacked at the Church where he was waiting for his good friend's funeral to begin. It is hard to imagine a more horrid thing to do than attack a man coming out of a church, let alone a man at a church to attend a good friend's funereal.[61] However, in an effort to justify Defendant Flynn's brutal attack, Mr. Williams was falsely charged with possession of a controlled dangerous substance.[62]

Unsurprisingly, however, there was never any controlled dangerous substance recovered by Defendant Flynn, Defendant Hicks, or any other Baltimore City Police Department officer and the State's Attorney's Office correspondingly entered a *nolle prosequi* in the District Court for Baltimore City, criminal case number 3B02130194.[63]

---

[61] *Id.* at ¶ 39.

[62] *Id.*

[63] *Id.* at ¶ 40.

### STANDARD OF REVIEW

In ruling on the Defendants' Motions to Dismiss, the Court must accept the allegations in the Plaintiff's Complaint as true, and dismiss the case only if "it appears beyond doubt that the [P]laintiff can prove no set of facts to support his allegations."[64] "[B]efore the reception of any evidence either by affidavit or admissions, its task is a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims."[65]

In an action for relief pursuant to 42 U.S.C. § 1983, to survive a defendant's motion to dismiss, a plaintiff need only provide "a short and plain statement of the claim showing that [he is] entitled to relief."[66] This Court may dismiss the Plaintiffs' Complaint only if it is clear that no relief could be granted under any set of facts which could be proved consistent with the stated allegations.[67]

More specifically, Federal Rule of Civil Procedure 8 merely requires "notice pleading."[68] Though at times various courts have attempted to apply a higher standard, the Fourth Circuit has time and time again reiterated the well-settled notice pleading standard:

> In our post-*Swierkiewicz* case law, we have hewed closely to the Supreme Court's instruction that 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests…[A] complaint meets Rule 8's requirements if, in light of the nature of the action, the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis…[T]he sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the defendant to respond.[69]

---

[64] *Richmond, F'burg & Pot. RR Co. v. Forst*, 4 F.3d 244 (4th Cir. 1993).
[65] *Sheuer v. Rhodes*, 416 U.C. 232, 236 (1974).
[66] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also, Swierkiewicz v. Soreman* 534 U.S. 506, 512 (2002)("Complaints in [§ 1983] cases, as in most others, must satisfy only the simple requirements of Rule 8(a).")
[67] *Haines v. Kerner*, 404 U.S. 579 (1972).
[68] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160 (1993); *Swierkiewicz v. Soreman NAS*, 534 U.S. 506, 512, 122 S.Ct. 192 (2002).
[69] *Chao v. Wood, Inc.*, 415 F.3d 342, 347-9 (4th Cir. 2005).

Moreover, in the context of the numerous federal civil rights violations contained in the Plaintiffs' Complaint, this Court "must be especially solicitous of the wrongs alleged and must *not* dismiss the complaint unless it appears to a certainty that the plaintiff[s] would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."[70]

Additionally, this Court is not required to conduct a more stringent review than is required pursuant to the Supreme Court's decision in *Bell Atlantic Corp.* v. *Twombly*.[71] *Twombly* turned on a complaint's "formulaic recitation of the elements of a cause of action," with no supporting factual allegations whatsoever, which is quite the opposite of the Plaintiff's Complaint here, which consists of 95 paragraphs and alleges facts that are more than sufficient to support the Plaintiff's causes of action alleged therein, some is painstaking detail.[72] Moreover, in holding that the *Twombly* plaintiff had failed to state a "plausible" claim, the Supreme Court expressly cautioned that:

> ➢ it was not altering the traditional "notice pleading" standards of Rule 8(a)(2) of the Federal Rules of Civil procedure;
>
> ➢ "once a claim has been stated adequately [under 8(a)(2)], it may be supported by showing any set of facts consistent with the allegations in the complaint";
>
> ➢ "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage"; and
>
> ➢ a motion to dismiss may not be granted "based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the fact finder."[73]

Ultimately, *Twombly* stands for the proposition that "Rule 8(a)(2) has it right."[74]

---

[70] *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)(internal quotation marks omitted).

[71] 127 S. Ct. 1955 (2007).

[72] *Id.*

[73] *Twombly*, 127 S. Ct. at 1959, 1964-65, 1969 & n.8, 1974.

[74] *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd Cir. 2008)(citation omitted); *see also Erickson*, 127 S. Ct. at 2200 ("Specific facts are not necessary [under Rule 8(a)(2)]; the [complaint] need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." (ellipsis in original; internal quotation marks omitted)); *Vill. Of Riverdale v. 138th St. Joint Venture,* 527 F. Supp. 2d 760, 766 (N.D. Ill. 2007) ("*Twombly*…merely instruct[s] that at some point the factual detail in the complaint may be so sketchy that the complaint does not provide [Rule 8 notice]."(internal quotations omitted)).

To the extent that it can be argued that this case presents a theory of liability against the Defendants that has not been fully tested, it should not be tested on the pleadings, but after sufficient development of the record.[75]

This Opposition is filed because the Defendants seek to dismiss the Plaintiff's Complaint. As the Defendants are well aware, such relief is a drastic and extreme result. Further, dismissal with prejudice is appropriate only if the Plaintiff's Complaint does not outline a viable claim.[76] However, and more importantly, a motion to dismiss claims of federal civil rights violations may only be denied when the legal standard is carefully applied and it is shown beyond doubt that the plaintiff can prove no set of facts in support of their claims that would entitle them to relief.[77]

In the event that it can be shown beyond doubt that the Plaintiff's Complaint does not allege sufficient facts in support of his claims that would entitle him to relief, amendments should be permitted in the interest of proceeding in an appropriate manner with litigation.[78]

In addition, the Defendants completely disregard the fact that the Plaintiff's allegations must be accepted as true at this stage by raising arguments that either challenge, mischaracterize, or disregard the facts alleged in the Plaintiff's Complaint. (Examples are identified throughout this Opposition.) Each of the Defendants' arguments must be rejected at this stage because "the purpose of a motion to dismiss is to test the legal sufficiency of the

---

[75] *See Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) and *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("the court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1357); *Kirksey v. R.J. Reynolds*, 168 F.3d 1039, 1040-1 (7th Cir. 1999) ("a claim should not be dismissed out of hand just because it is so novel that it cannot be fitted into an existing legal category"); *Baker v. Cuomo*, 58 F.3d 814 (2nd Cir. 1995), vacated and reversed on other grounds, 85 F.3d 919; *Santara Va. Beach Gen. Hosp. v. LeBeau.* 182 F.Supp.2d 518 (E.D. Va. 2002); *Logiodice v. Trustees of Maine Centr. Inst.*, 135 F.Supp.2d 199, 205-6 (D. Me. 2001); *Wadja v. R.J. Reynolds Tobacco Co.*, 103 F.Supp.2d 29, 36 (D. Mass. 2000); *Official Comm. Of Unsecured Creditors of Buckhead Amm. Corp. v. Reliance Capital Group. Inc.*, 178 B.R. 956, 961 (D. Del. 1994); *JES Props. Inc. v. USA Equestrian. Inc.*, 2003 U.S. Dist. LEXIS 20633, *26-27 (M.D. Fl. 2003); *Mayes v. Office Depot. Inc.*, 2002 U.S. Dist. LEXIS 27063, *8 (W.D. La. 2002).
[76] *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648 (7th Cir. 1984).
[77] *Alie v. NYNEX Corp.,* 158 F.R.D. 239 (E.D.N.Y. 1994).
[78] *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988) (dismissal for failure to meet pleading requirements ordinarily should be accompanied by leave to file an amended complaint); *Washington v. T.G.&Y. Stores Co.*, 324 F.Supp. 849 (W.D.La. 1971) (allowing amended complaint to correct a misnomer); and *Stith v. Manor Baking Co.*, 418 F.Supp. 150, 156-157 (W.D.Mo. 1976) (if allegations are not sufficient, "complaint is dismissed without prejudice to amend").

complaint and not the facts that support it."[79] The issue presented on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[80]

Under the Federal Court's general approach to pleadings, Mr. Williams can prove facts to support all the allegations in his Complaint, making dismissal inappropriate. Thus, the Defendants' Motions to Dismiss should be denied. However, in the unlikely event that this Court finds that dismissal is warranted, Mr. Williams respectfully request that this Court afford him the opportunity to correct any defects with an amended complaint, which would relate back to his original Complaint.

---

[79] *Mabe*, 367 F. Supp. 2d at 867 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).
[80] *Id.*

## *ARGUMENT*

**I.     THE PLAINTIFF HAS PLEADED A VIABLE *MONELL* CLAIM AGAINST THE BALTIMORE CITY POLICE DEPARTMENT.**

At the outset, the Police Department's Motion to Dismiss illuminates a few facts about the drafting:

> ➢  that the Police Department has not read Mr. Williams' Complaint

> ➢  that the Police Department merely cut and pasted an argument from a different motion involving a "decedent" or somehow missed the obvious fact that to exit through the front door of a church on foot and then get attacked by Defendant Flynn, Mr. Williams had to have been alive

Additionally, the Police Department has completely overlooked the paragraphs of Mr. Williams' Complaint discussing known patterns, practices, and/or policies and customs in the Police Department and specifically in the Eastern District, where Mr. Williams was attacked and kidnapped.  *See* paragraph one, quoting the former captain of the Eastern District discussing the Police Department's pattern, practice, and/or policy and custom of officers using excessive force and the specialty units that were tasked with using an "at any cost" school of policing in the Eastern District. *See* paragraph two quoting the former chief of the Police Department's Internal Disciplinary System discussing the pattern, practice, and/or policy and custom in the Police Department of giving police officers freedom to make false arrests and manipulate evidence without meaningful punishment or reprimand, many times involving back-door deals. *See* paragraph three, communicating that it is no surprise that there is "no doubt in Lieutenant Russell's mind that the officer the black female detective was trying to report is still running around, still abusin' community members, and still loggin' complaints." And *see* paragraph thirty-eight discussing the pattern, practice, and/or policy and custom in the Police Department after a false arrest of getting hospital staff to falsely note in arrestees' records that they are addicted to drugs. We digress.

A municipality may be liable under § 1983 if "the municipality itself causes the constitutional violation."[81] Liability may arise because of a policy or custom that is "fairly attributable to the municipality" and is the "moving force" behind the constitutional violation.[82]

---

[81] *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987).

[82] *Id.*

A municipal policy may consist of written ordinances and regulations, or "certain affirmative decisions of individual policymaking officials."[83] Municipal custom exists when "a particular practice is so persistent and widespread and so permanent and well-settled as to constitute a custom or usage with the force of law."[84] Absent a direct policy or custom, municipal liability may be inferred from "deliberate indifference" to the risk of a constitutional violation because of "a known history of widespread constitutional deprivations on the part of city employees."[85]

In addition to the claims of patterns, practices, and/or policies and customs enumerated above, Mr. Williams additionally alleges that the Police Department had a policy or custom of requiring police officers to:

> ➢ use excessive force without regard for the possibility that they could seriously injure or take human life where less lethal alternatives exist;[86]

> ➢ to fabricate evidence, make arrests without probable cause or legal justification, and to falsely imprison Baltimoreans;[87]

> ➢ intimidate civilians with unlawful physical force.[88]

These allegations and those set forth more fully above are "significant enough that even those individuals removed from the day-to-day operations" of the Police Department should have known about this police misconduct.

Mr. Williams also contends that the "final policymakers" knew of past unconstitutional practices, failed to remedy them, and were "deliberately indifferent" to the risk of future violations.[89] The Police Department counters that Mr. Williams has failed to allege facts concerning an unconstitutional policy or custom attributable to the Police Department, and that the Police Department was deliberately indifferent to any alleged policy or custom.[90] However, clear as day in paragraph forty-two, Mr. Williams alleges that the named Defendants to this lawsuit "were acting either pursuant to official policy or the practice, custom, or usage of the…Police Department, a final decision by a policy maker, or as a result of deliberate indifference."

---

[83] *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999) (internal citations omitted).

[84] *Id.*

[85] *Id.*

[86] Complaint at ¶ 44.

[87] *Id.* at ¶ 43.

[88] *Id.* ¶ 45.

[89] *Id.* at ¶48.

[90] BPD Motion at 1.

Collectively, these allegations provide more than a mere "formulaic recitation of the elements of a cause of action," even if Mr. Williams may not ultimately prevail on his claims. Thus, this Court must deny the Defendants' challenges to Mr. Williams' § 1983 claims against the Police Department.

**II.    THE PLAINTIFF HAS PLEADED VIABLE CLAIMS OF CONSPIRACY AGAINST DEFENDANT FLYNN AND DEFENDANT HICKS.**

In the light most favorable to Defendant Flynn and Defendant Hicks, they present a sophomoric argument that Mr. Williams' § 1983 conspiracy claims are barred by the *intracorporate conspiracy doctrine* and, correspondingly, that Mr. Williams' causes of action where a conspiracy has been alleged should be dismissed with prejudice. Taking their misunderstanding a step further, the Defendants also argue that even assuming, *arguendo*, that Mr. Williams is successful in proving that the Defendants maliciously prosecuted, falsely arrested, and/or falsely imprisoned him, that "there would not have been a conspiracy created because they would have been acting within the scope of their duties and employment [for the Baltimore City Police Department]."[91] For the reasons set forth more fully hereinafter, the Defendants' arguments must be rejected and their Motion to Dismiss must be denied.

**A.    THE PLAINTIFF'S CAUSES OF ACTION SHOULD NOT BE DISMISSED EVEN ASSUMING, *ARGUENDO*, THAT HIS CONSPIRACY CLAIMS ARE FLAWED, AS CONSPIRACY CLAIMS ARE NOT A SEPARATE CAUSE OF ACTION, BUT RATHER ARE RELATED INDEPENDENT CLAIMS WITHIN THE UNDERLYING CAUSES OF ACTION.**

Civil conspiracy is not an independent cause of action under Maryland law.[92] Likewise, a conspiracy claim under § 1983 is not an independent cause of action, but a means to impute liability on third persons.[93]

---

[91] Police Defendants at pg. 5.

[92] *Housley v. Holquist*, 879 F.2d 473 (2011).

[93] *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir.1993); see also *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F.Supp.2d 803, 843 (E.D.Pa.1998) (stating that " § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right") (citations omitted); *Kaplan v. Clear Law City Water Auth.*, 794 F.2d 1059, 1065 (5th Cir.1986) (stating that § 1983 conspiracy is not a claim in itself, but "can furnish the conceptual spring for imputing liability from one to another...."); *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980) (stating that § 1983 "[c]onspiracy is merely a mechanism by

### B.    THE PLAINTIFF'S CAUSES OF ACTION ARE NOT BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE.

Mr. Williams' conspiracy claims state that the Defendants conspired to deny him of his constitutional rights. The Defendants argue that Mr. Williams' conspiracy allegations should be dismissed for failure to state a claim because there is no "plurality of actors" to support a cause of action for conspiracy. According to the Defendants, the intracorporate conspiracy doctrine applies so that there is no plurality of actors, due to the fact that the Defendants were police officers for the Police Department at the time of the incidents underlying Mr. Williams' Complaint.

The proof of a conspiracy to violate the civil rights of another must ultimately meet a "weighty burden," but to withstand a motion to dismiss, the pleadings must meet only the basic standard established in *Conley v. Gibson*.[94] To establish a conspiracy under 42 U.S.C. § 1983, the plaintiff must show that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in ... deprivation of a constitutional right."[95]

When defendants are all a corporation and its officers, or officers of the same corporation, the intracorporate conspiracy doctrine provides that the defendants are immune from liability due to the lack of "joint action." Under the doctrine, "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."[96] This immunity is not destroyed even if the agents are sued in their individual capacity.[97]

---

which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy") (citations omitted); *Nieves v. McSweeney*, 73 F.Supp.2d 98, 104 (D.Mass.1999) ("In a[s]ection 1983 cause of action, an allegation of conspiracy is merely a mechanism by which to obtain the necessary state action or to impose liability on one defendant for the acts of the others performed in furtherance of the conspiracy."); *Hanten v. Sch. Dist. of Riverview Gardens*, 13 F.Supp.2d 971, 978 (E.D.Mo.1998) (stating that § 1983 conspiracy "does not set forth an independent cause of action") (citations omitted).

[94] . 355 U.S. at 45-46, 78 S.Ct. 99. *See also Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996).
[95] *Hinkle*, 81 F.3d at 421.

[96] *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir.1985).

[97] *Id.* at 1252 ("Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation.").

Immunity can be destroyed, however, if an agent is performing an unauthorized act in furtherance of a conspiracy.[98] As the United States Court of Appeals for the Fourth Circuit has recognized, "unauthorized acts [of an employee] in furtherance of a conspiracy may state a claim...."[99] Even if certain acts of officials would constitute corporate action, unauthorized acts of those officials could not avoid a conspiracy charge.[100]

In *Hodgin v. Jefferson*, the United States District Court for the District of Maryland considered a motion to dismiss based on the intracorporate conspiracy doctrine.[101] The Court held that individuals employed by the same corporation could be held liable for unauthorized acts committed in furtherance of a conspiracy.[102] The Court ruled that such an exception existed in that case, because the plaintiff had charged that a defendant officer had "ignored the stated policies" of the defendant company, and therefore his alleged actions were unauthorized by the company and the plaintiff had sufficiently pled the requirements of a conspiracy.[103]

This Court should find these facts to be similar to those in the present case. Mr. Williams' allegations are sufficient to invoke the exception to the intracorporate conspiracy doctrine that the actions of the officers were unauthorized, and Mr. Williams has therefore stated a cause of action. The allegations that the Defendants targeted, assaulted, falsely arrested, falsely imprisoned, and maliciously prosecuted Mr. Williams were not the product of routine decision-making. Rather, they are the classic charges of conspiracy in which more than one employee within the Police Department took concerted action to harm Mr. Williams.

---

[98] *Id*. at 1253.
[99] *Id*. at 1252-53 (citing, 447 F.Supp. 804, 807 (D.Md.1978)).
[100] *Id*. at 1253.
[101] 447 F.Supp. at 807.
[102] *Id*.
[103] *Id*.

C.    **THE PLAINTIFF HAS PLEADED SUFFICIENT FACTS TO SUPPORT THE *PRIMA FACIE* ELEMENTS OF CONSPIRACY.**

To establish a civil conspiracy under § 1983, a plaintiff must show that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right."[104] Plaintiff also "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective."[105]

To succeed at trial, the plaintiff is not required to establish direct proof, but must be able to put forward evidence which will "reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."[106]

Thus, a plaintiff "need not produce direct evidence of a meeting of the minds…If two persons pursue the same object, one performing one part of the act and the other another part of the act so as to complete it, with a view to the attainment of the object to which they are pursuing, this will be sufficient to constitute a conspiracy."[107]

Moreover, a meeting of the minds does not require a direct connection between all conspirators. It requires only that "the defendant knew of the conspiracy's purpose and some action indicating his participation."[108] "[T]he evidence need only establish a slight connection between the defendant and the conspiracy."[109] The plaintiff need not establish that a defendant "had knowledge of his coconspirators" or "knowledge of the details of the conspiracy."[110]

Even though adducing sufficient evidence may appear difficult at the point of a motion to dismiss, the difficulty of doing so cannot be a basis for dismissing conspiracy claims.[111] A motion to dismiss conspiracy claims should not be granted unless "it appears

---

[104] *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)).

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir.), cert denied, 60 U.S.L.W. 3879 (U.S. 1992)) (citations omitted).

[109] *Id.*

[110] *Id.*

[111] *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[112]

Mr. Williams in his Complaint alleges sufficient facts that, if proven, would entitle him to judgments in his favor. Mr. Williams alleges that Defendant Flynn and Defendant Hicks "conspired by entering into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of initiating and continuing criminal prosecutions against Mr. Williams on the criminal charge of possession of a controlled dangerous substance…[and] did in fact, under the color of law initiate and continue criminal prosecutions against Mr. Williams with the criminal charge of possession of a controlled dangerous substance."[113] In paragraph eighty-five, Mr. Williams makes the same allegations against both Defendant Flynn and Defendant Hicks as to their false arrest and imprisonment of him after Defendant Flynn attacked him. Next, Mr. Williams alleges that Defendant Flynn and Defendant Hicks acted to cover up the injury maliciously inflicted by Defendant Flynn (excessive force) and to cover up the initial violation of Mr. Williams' civil rights by supporting and prosecuting baseless charges of possession of a controlled dangerous substance.[114] These acts furthered the conspiratorial objective of covering up the earlier rights violations and independently constituted violations of constitutional rights.

These allegations, if proven, could reasonably lead a jury to infer that Defendant Flynn and Defendant Hicks were engaged in a conspiracy. Given that both officers were present while Mr. Williams was being maliciously attacked and both officers took Mr. Williams to the emergency room, discovery may additionally yield evidence that both officers were also involved in subsequent proactive events that are currently unknown. Such evidence also would support further inferences that the identified "overt acts" of each defendant conspirator were "done in furtherance of the conspiracy" and that through such actions the individual officers also had "acted jointly in concert."[115] These inferences and the allegations expressly set forth by Mr. Williams in his Complaint would be similar to those found reasonable in *Hafner v. Brown*, where evidence that certain

---

[112] *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted).

[113] Complaint at ¶ 77.

[114] *Id.* at ¶ 81.

[115] *Hinkle, supra*, at 421.

defendants were present both during the arrest of plaintiff and later when plaintiff's rights were violated by being beating was sufficient evidence to support a reasonable inference that defendants had conspired together to violate plaintiff's rights.[116]

### CONCLUSION

For the forgoing reasons in the body of this Onmibus Opposition to the Defendants' Motions to Dismiss, it is clear that Mr. Williams has adequately pled all claims against the Defendants, and that, as such, this Honorable Court must deny the Defendants' Motions as to all relief requested with the exception of the claims against Defendant Batts in his official capacity to which Mr. Williams concedes should be dismissed.


Respectfully Submitted,


**LAW OFFICE OF BARRY R. GLAZER, P.C.**


By: _____/s/_____
       Charles H. Edwards IV
       Federal Bar No.: 29977
       P.O. Box 27166
       1010 Light Street
       Baltimore, Maryland 21230
       Phone:  (410) 547-8568
       Fax:     (410) 547-0036
       charles.edwards@robinhoodlawyers.com

       *Counsel for the Plaintiffs*

---

[116] *Hafner v. Brown*, 983 F.2d 570, 577-78 (4th Cir. 1992).

### *REQUEST FOR HEARING*

The Plaintiff requests a hearing in this matter on all issues addressed herein the foregoing Omnibus Opposition to the Defendants' Motions to Dismiss.


_____/s/_____

Charles H. Edwards IV

### *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that, this 7th Day of July 2014, a copy of the foregoing Omnibus Opposition to the Defendants' Motions to Dismiss and proposed order were served upon all counsel of record through the Court's electronic filing system.


_____ /s/_____

Charles H. Edwards IV