```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


TROY WILLIAMS                  *
                               *
v.                             *    Civil Action No. WMN-14-1125
                               *
MAYOR AND CITY COUNCIL         *
OF BALTIMORE CITY et al.       *
                               *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is a motion to dismiss filed by the Baltimore Police Department and Police Commissioner Anthony Batts, ECF No. 6, as well as a partial motion to dismiss filed by Defendants Sergeant Brian Flynn and Detective Dane Hicks. ECF No. 11.  The motions are fully briefed.  Upon review of the Complaint, the briefing, and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that both motions will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of an alleged brutal attack on Plaintiff by Defendant Brian Flynn, an officer of the Baltimore City Police Department (BPD).  Plaintiff asserts that this attack, which occurred on July 22, 2011, was in retaliation for his submission a few weeks earlier of a complaint to the BPD concerning another attack he had witnessed by a different BPD officer on another individual.  Plaintiff also asserts that this

kind of misconduct was widespread in the BPD.  The allegations in the Complaint are as follows.

On June 24, 2011, Plaintiff was taken into custody during a police raid of a local bar and was held in jail overnight. While in the jail, Plaintiff observed "John Doe #1" enter a cell and attack another individual who had been arrested in the same raid.  ECF No. 1 ¶ 24.  Upon release the next morning, Plaintiff filed a complaint with the BPD concerning the attack he had witnessed.  On or about July 1, 2011, Plaintiff had a conversation with Lieutenant Colonel Melvin Russell of the BPD who was the supervisor of John Doe #1 and Defendant Flynn and, by happenstance, is also Plaintiff's cousin.  Plaintiff inquired about the complaint he had filed and Russell responded that he had heard nothing about it, but would "get to the bottom of what happened."  Id. ¶ 27.

A few weeks later, as Plaintiff was coming out of church in East Baltimore, an unmarked BPD cruiser driven by John Doe #1 approached him.  Id. ¶ 30.  Defendant Flynn jumped out of the passenger side of the vehicle and ran at Plaintiff.  Flynn "began aggressively touching Mr. Williams' body" and swung his left fist at Plaintiff's head but Plaintiff was able to move out of the way.  Id.  Flynn then swung the police radio that he was holding in his right hand and hit Plaintiff on the top of his head with the radio.  Plaintiff lost consciousness and awoke a

few moments later lying in a pool of his blood with mechanical restraints on his wrists.

Shortly thereafter, a female BPD officer, Jane Doe #1, arrived in her police cruiser and recognized Plaintiff as a family friend.[1] She also informed Defendant Flynn that Plaintiff was Lieutenant Russell's cousin. Plaintiff alleges that "in what only could have been an effort to save face," Flynn began questioning Plaintiff "where 'it' was," pretending that he was searching for some sort of drugs or weapon. Id. ¶ 34. Plaintiff was then taken to the emergency room where the wound on his head was treated. Plaintiff asserts that Flynn instructed the emergency room staff to note in the medical records that Plaintiff was a heroin addict although Plaintiff denies that he is an addict or that Flynn had any reason to believe that he is an addict. Plaintiff was then falsely charged with possession of a controlled dangerous substance but the charge was subsequently nolle prossed.

Plaintiff has filed a five count complaint in this Court naming as Defendants: the Mayor and City Council of Baltimore

---

[1] It is unclear why this female officer was able to immediately recognize Plaintiff as a family friend and yet, now years after this incident, her identity is still unknown to Plaintiff. It also seems unusual that Plaintiff is still unable to identify "John Doe #1," raising at least some question as to the due diligence employed by Plaintiff's counsel prior to the filing of this action.

City; Baltimore Mayor Stephanie Rawlings-Blake;[2] the BPD; BPD Commissioner, Anthony Batts; Brian Flynn; and Dane Hicks.[3]

Plaintiff brings a Monell[4] claim against the BPD (Count One),

---

[2] It is not clear why Plaintiff named the "Mayor and City Council of Baltimore City" and Stephanie Rawlings-Blake separately. In the caption of the Complaint, Plaintiff indicates that Stephanie Rawlings-Blake is being sued "in her capacity as Mayor of the City of Baltimore." In the body of the Complaint, however, Plaintiff states that she is being sued in her individual and official capacity. ECF No. 1 ¶ 12. In addition to this confusion as to the capacity in which the Mayor is being sued, the undersigned notes that Judge George Russell of this Court recently issued an opinion holding that "a § 1983 claim cannot be brought against the City [of Baltimore] for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers." Estate of Anderson v. Strohman, Civ. No. GLR-13-3167, 2014 WL 1153785, at *6 (D. Md. Mar. 19, 2014).

While noting the difficulties in the claims against these parties, these claims will not be resolved in this opinion as those parties have neither answered the Complaint nor filed a motion to dismiss. There is, in fact, no indication in the docket that they have been served with the summons and Complaint. Under Rule 4(m) of the Federal Rules of Civil Procedure, if a defendant is not served within 120 days of the filing of a complaint, the claim against that defendant should be dismissed, without prejudice, unless good cause is shown for the failure to serve. Plaintiff shall be given ten days from the date of this Memorandum and Order to show cause why the claims against the Mayor and City Council of Baltimore and Mayor Stephanie Rawlings-Blake should not be dismissed.

[3] In the section of the Complaint listing "Defendants," Plaintiff references "John and Jane Does 1-20, police officers of the [BPD]" and "Richard and Jane Roes 1-20, supervisory officials of the [BPD]." ECF No. 1 ¶¶ 17, 18. These Defendants do not appear in the caption of the Complaint and none of the counts in the Complaint indicated that any of those counts are being asserted against these Defendants.

[4] Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

4

arguing that the BPD had "policies, customs, and/or patterns, and practices encouraging and requiring officers to fabricate evidence," "to use excessive force," and "to intimidate civilians with unlawful physical force." Id. ¶¶ 43-45. Within that same count, Plaintiff also alleges that the BPD has failed to discipline, train, and supervise its personnel. In Count Two, asserted against Commissioner Batts in his individual and official capacities, Plaintiff alleges that Batts either knew or, in the exercise of due diligence, should have known that BPD officers, particularly those named in the Complaint, "posed a pervasive and unreasonable risk of harm to civilians." Id. ¶ 64. Plaintiff contends that Batts' failure to train and discipline his officers led to the incident of which he complains.

In Count Three, Plaintiff asserts an excessive use of force claim under 42 U.S.C. § 1983 against Defendant Flynn. Counts Four and Five are also claims under § 1983, Count Four for malicious prosecution and Count Five for false arrest and imprisonment. Named as Defendants in these last two counts are Defendants Flynn and Hicks. The Complaint is not at all clear as to the role played by Defendant Hicks, however, alleging only that "Defendant Flynn and Defendant Hicks falsely arrested and imprisoned Mr. Williams," with no additional detail. Id. ¶ 51. These counts also allege, in addition to the underlying

5

constitutional violations, conspiracies to violate those constitutional rights.

Defendant BPD has moved to dismiss the claims against it, arguing that the Complaint contains insufficient factual allegations to support a Monell claim, but instead, relies solely on formulaic legal conclusions.  Defendant Batts moves to dismiss the claim against him on the ground that the Complaint contains no allegations that he had any direct contact with Plaintiff or direct involvement with the incident.  ECF No. 6-1 at 13-15.[5]  Although in his "Omnibus Opposition" to the motions to dismiss, Plaintiff suggests that Defendants are seeking to dismiss his Complaint in its entirety, Defendants Flynn and Hicks in their partial motion to dismiss seek only the dismissal of the conspiracy aspects of Counts Four and Five.

---

[5] Although not mentioned in the motion, in the Reply memorandum, Batts' counsel seems to have suddenly come to the realization that Batts had yet to be appointed as the Commissioner of the BPD at the time of the incidents referenced in the Complaint. Batts did not become Commissioner until September 2012.  See ECF No. 16 at 6 n.3.  The Court notes in this context a general lack of care and attention to the drafting of the motion.  The memorandum in support of the motion was clearly cut and pasted from pleadings in other cases.  At one point, Plaintiff is referred to as "the decedent."  ECF No. 6-1 at 12.  In other places, counsel carelessly used a "find and replace" word processing function to replace "plaintiff" with "Mr. Williams," not realizing he was inserting "Mr. Williams" in quotations from other cases.  See id. at 6.  Counsel also pasted the exact same full-page discussion of a Judge Chasanow's decision in two different places in the memorandum.  Id. at 9 and 11-12.

**II. LEGAL STANDARD**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege enough facts to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quotation marks and citations omitted).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.  In ruling on a motion to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994).

Of note, while Plaintiff's counsel references Twombly in his discussion of the legal standard for a motion to dismiss under Rule 12(b)(6), he actually relies on language from pre-

Twombly/Iqbal decisions. Plaintiff's counsel posits that a claim can only be dismissed "'if it appears beyond doubt that the [P]laintiff can prove no set of facts to support his allegations.'" ECF No. 12 at 11 (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244 (4th Cir. 1993)). This standard, however, which originated in Conley v. Gibson, 355 U.S. 41 (1957) was specifically abrogated in Twombly. 550 U.S. at 561-62. Elsewhere in his opposition, Plaintiff's counsel erroneously states that "to withstand a motion to dismiss, the pleadings must meet only the basic standard established in Conley v. Gibson." ECF No. 12 at 18.

**III. DISCUSSION**

**A. Claims Against the BPD**

Section 1983 provides a remedy against any person who, under color of law, deprives another of rights protected by the United States Constitution. 42 U.S.C. § 1983. It is well established that municipalities and other local government units may be found liable under § 1983 where they cause a constitutional deprivation through an official "policy or custom." See Monell, 436 U.S. at 690. They can only be held liable, however, "where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 375 (1989). A municipality or local government

unit like the BPD cannot be held liable in a § 1983 action under a theory of respondeat superior. Monell, 436 U.S. at 694.

To assert a viable § 1983 Monell claim against a municipality, a plaintiff must establish that (1) the municipality had an unconstitutional "policy or custom"; and (2) that this "policy or custom" caused a violation of the plaintiff's constitutional rights. Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987). A plaintiff can establish the existence of an unconstitutional policy or custom in one of four ways: (1) a formal policy, regulation or ordinance; (2) an express decision of an official with "final policymaking authority"; (3) the municipality's failure to train its employees, such that the municipality was "deliberately indifferent" to the constitutional rights of its citizens; or (4) a "persistent and widespread practice" of unconstitutional conduct by municipal employees so as to become a "custom or usage" of the municipality. Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). Plaintiff relies on the latter two ways in his attempt to establish an unconstitutional policy or custom of the BPD.

To prevent municipalities from simply being held vicariously liable for the acts of their employees, courts have established strenuous limits on Monell theory claims. Where the claim is based on inadequate training, courts require a

9

plaintiff to establish (1) "a specific deficiency rather than general laxness or ineffectiveness in training," and (2) "that the deficiency or deficiencies [are] such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." Spell, 824 F.2d at 1390.  Where plaintiffs attempt to establish the existence of a policy or custom based on alleged "persistent and widespread" practices, courts have dismissed those claims where they have failed to plead facts of prior similar incidents. Carter, 164 F.3d at 220.  A "meager history of isolated incidents" does not "approach the 'widespread and permanent' practice necessary to establish municipal custom." Id. (quoting Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995)).

Courts have also held that, when considering the relationship between the alleged policy or custom and the specific constitutional violation alleged, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-404 (1997).  To establish a Monell claim, the plaintiff must show "a close fit between the unconstitutional policy and the constitutional violation." Carter, 164 F.3d at 218.  "[A] plaintiff cannot rely upon scattershot accusations of unrelated

constitutional violations to prove either that a municipality was indifferent to the risk of [his] specific injury or that it was the moving force behind [his] deprivation." Id.

Here, the BPD moves to dismiss the Monell claim on the ground that Plaintiff has offered nothing more than conclusory, formulaic legal assertions of a policy or custom on the part of the BPD.  Plaintiff protests that his Complaint, "consists of 95 paragraphs and alleges facts that are more than sufficient to support the Plaintiff's causes of action alleged therein, some in painstaking detail."  ECF No. 12 at 12.  Looking at the actual Complaint, however, the Court observes that, while Plaintiff provides considerable detail concerning the incident involving Plaintiff, only four of those 95 paragraphs even arguably allege any facts in support of policies or customs of the BPD, and Plaintiff seems to concede as much.  See id. at 15 (identifying the four paragraphs "discussing known patterns, practices, and/or policies and customs" in the BPD, i.e., paragraphs one, two, three, and thirty-eight).  The Court observes, however, that even the few paragraphs that go beyond the specific incident involving Plaintiff either do not reflect any unconstitutional policy or custom that is closely fitted to the constitutional violation suffered by Plaintiff or are themselves unsupported by any factual allegations.

11

Plaintiff alleges that he was hit in the head, arrested, and charged with a crime in retaliation for having filed a complaint with the BPD about an assault by John Doe #1 on an unknown individual.  It also appears that Plaintiff is alleging that it was John Doe #1 that drove Flynn to the scene where Plaintiff was accosted.  Thus, while Plaintiff cites two incidents of the use of excessive force by BPD officers, both seem to revolve around the same individual, John Doe #1.[6]

As purported evidence of some broader policy, Plaintiff cites a Slate.com blog discussing "flex squads," or "jump out boys" which it describes as "speciality units []tasked with moving into high-crime areas and rapidly lowering crime rates . . . where success is measured by the number of arrests made or the amount of contraband seized."  ECF No. 1 ¶ 1 (citing Justin Peters, Do Arrest Quotas Encourage Police Officers to Break the Law, http://www.slate.com/blogs/crime/2013/03/15/kendell_richburg_baltimore_police_do_arrest_quotas_encourage_cops_to_break.html; March 15, 2013).  Plaintiff does not allege that Defendant Flynn or John Doe #1 were part of any "flex squad" or that their motivation related to increasing their arrest

---

[6] Because the attack on the unknown individual took place at a Maryland State Correctional Facility, the BPD suggests that John Doe #1 is "quite likely" a state correctional officer and not a BPD officer.  ECF No. 16 at 7.  The Complaint, however, has John Doe #1 driving a BPD cruiser, ECF No. 1 ¶ 30, so it could be inferred that John Doe #1 was a BPD officer.

statistics. The only similarity between the conduct described in the article and the incident involving Plaintiff is the generalized description that the officers in the flex squads "tend to jump out of cars and aggressively pursue their targets," ECF No. 1 ¶ 1, which is not the kind of "close fit" by which Monell claims can be supported. This article was also written two years after the incident involving Plaintiff.

Plaintiff next cites a 2009 WBALTV.com article relating the opinion of a former BPD official that the BPD is "rife with corruption and turns a blind eye to bad officers patrolling the streets." Id. ¶ 2 (quoting WBALTV.com, Former City Official: Police Dept. Full Of Corruption (July 2, 2009)). Because the discipline of officers is inconsistent, the article reports, bad officers are "running willy-nilly in the city, undermining public safety." Id. Plaintiff's quotation of this article still amounts to nothing more than generalized, vague allegations and points to no specific previous similar incidents or causal connection to the alleged deprivation of Plaintiff's rights.

Next, Plaintiff references a quotation from Lieutenant Russell that Plaintiff set out as an introduction to his Complaint. Id. ¶ 3 and Introduction (quoting Melvin Russell,

13

Racial Differences in Arrests: Are Community – Police Partnerships a Solution, Open Society).[7] The quotation appears to relate to one of the "jump out boy's" use of racial epithets and excessive force against African American youths. This quotation is of marginal relevance as there does not appear to be any racial aspect to Plaintiff's case; he is alleging retaliation for filing a BPD complaint.

Finally, in paragraph thirty-eight of the Complaint, Plaintiff alleges that Flynn instructed the hospital staff to falsely note in Plaintiff's medical record that he is addicted to heroin and that doing so, "is a pattern, practice, and/or policy and custom within the [BPD] that is utilized by police officers after they have brutally attacked so-called suspects." Id. ¶ 38. While this alleged policy or custom has at least an arguably closer fit with the constitutional violation alleged here, Plaintiff has still failed to plead any facts of any prior similar incidents.

Thus, while Plaintiff peppers his Complaint with conclusory allegations concerning BPD policies and customs, he has alleged no specific facts in support of those conclusions, beyond those

---

[7] Although Plaintiff does not explain the source of this quote beyond the reference to "Open Society," this appears to be from a transcript of a June 17, 2013, Open Society Foundation panel discussion in which Russell participated. See http://www.opensocietyfoundations.org/sites/default/files/racial-differences-arrests-are-community-police-partnerships-solution-20130617_0.pdf

concerning his own injury.  Where a plaintiff fails "to support th[e] bald conclusion [of municipal policy or custom] with any factual allegations beyond those surrounding his own injury and arrest," his Monell claims must be dismissed.  Ross v. Prince George's Cnty, Md., Civ. No. DKC-11-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012); see also Lee v. O'Malley, 533 F. Supp. 2d 548, 553 (D. Md. 2007) (concluding that a plaintiff's mere assertion that "arrests [were] a matter of policy, tradition and custom within the Baltimore City Police Department" failed to support "any claim that [his] arrest was the result of some custom or policy").

### B. Claims Against Commissioner Batts

To the extent Plaintiff is asserting a claim against Commissioner Batts in his official capacity, it fails on the same grounds as the claims against the BPD.  To the extent Plaintiff intended to assert a claim against him in his individual capacity, the claim fails because the Complaint alleges no personal involvement on his part in the alleged unconstitutional conduct.  Given that Batts was not a part of the BPD at the time of the incident, having not been appointed as Commissioner until September 2011, he obviously could not have been involved in these events.

### C. Claims Against Defendants Flynn and Hicks

Defendants Flynn and Hicks move to dismiss only the conspiracy claims brought against them, arguing that these claims fail under the "intracorporate conspiracy doctrine." This doctrine, which originated in the field of antitrust law, teaches that "'[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952)). Thus, agents from a single legal entity are "legally incapable of conspiracy, which requires multiple parties acting together." Lewin v. Cooke, 28 Fed. App'x 186, 195 (4th Cir. 2002) (citation omitted). This doctrine has been held to be applicable to government entities as well. Because Defendants Flynn and Hicks are both employees of the BPD and are alleged to have been acting within the scope of their employment at all times relevant, these Defendants argue that they could not have formed a conspiracy.

There are two recognized exceptions, however, to the intracorporate conspiracy doctrine: (1) when a corporate officer has an "independent personal stake in achieving the corporation's illegal objectives," Greenville Publ'g Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir.1974), and (2) when the agent's acts are "unauthorized." Buschi, 775 F.2d at

16

1252-3; Hodgin v. Jefferson, 447 F. Supp. 804 (D. Md. 1978). Plaintiff argues that the second exception applies here.  In opposing the motion to dismiss, Plaintiff suggests that when Flynn and Hicks "targeted, assaulted,[8] falsely arrested, falsely imprisoned, and maliciously prosecuted" him, they "ignored the stated policies" of the BPD and, thus, their actions were unauthorized.  ECF No. 12 at 19.

While arguing in his opposition that the conduct was unauthorized, Plaintiff alleges in the Complaint that Flynn and Hicks were "at all times pertinent" acting within the scope of their employment as agents, servants, and employees of the BPD. ECF No. 1 ¶¶ 15-16.  Furthermore, Plaintiff alleges that, at all times relevant, these Defendants were acting under color of law and "pursuant to [their] authority as [] police officer[s] of the [BPD]."  Id.  Although addressing the issue in a different context, the Maryland Court of Appeals has observed that making arrests is a function incident to a police officer's "general authority as a police officer," even if the arrest in question was deemed unlawful.  Houghton v. Forrest, 989 A.2d 223, 231 (Md. 2010).

In Kangelee v. Baltimore City Police Dep't, Civ. No. RDB-12-1566, 2012 WL 5457231 (D. Md. Nov. 7, 2012), this Court

---

[8] The Court notes that there is nothing in the Complaint to support the conclusion that Defendant Hicks was in any way involved in the alleged assault of Plaintiff.

17

rejected an argument similar to that raised by Plaintiff in the context of an alleged conspiracy to violate the plaintiff's civil rights.  In Kangelee, an off-duty and allegedly drunk BPD officer took out his department-issued weapon and pointed it at the plaintiff.  The officer subsequently shot and killed the plaintiff's brother.  The plaintiff alleged that the BPD police commissioner conspired with the off-duty officer to deprive her of her rights by, inter alia, failing to properly train him despite previous incidents of "alchohol-fueled" shootings.  Id. at *7.  In response to the defendants' invocation of the intracorporate conspiracy doctrine, the plaintiff argued that the doctrine was inapplicable "because although [the officer] acted under color of law, 'he exceeded the bounds of his authority when pointing his duty weapon at [the plaintiff] without probable cause or even suspicion.'"  Id. (quoting the plaintiff's opposition).  This Court noted, however, that because the plaintiff had alleged in her complaint that the officer "at all times relevant . . . acted under color of law," she "therefore claims that in all circumstances he was acting as an agent of the [BPD]."  Id.  Accordingly, this Court concluded that "the intracorporate conspiracy doctrine is applicable."  Id.

On that same basis, the Court will therefore dismiss the conspiracy aspects of Count Four and Five.[9]  The Court notes that these counts will go forward as to the underlying wrongful prosecution and false arrest/imprisonment claims.  Although the Complaint could be more clear, Plaintiff asserted claims for "Violation and Conspiracy to Violate" his constitutional rights.  See Captions of Counts Four and Five.  Defendants did not challenge the underlying claims, just the conspiracy aspect of those claims.

## IV. CONCLUSION

For these reasons, the motion to dismiss filed by the BPD and Commissioner Batts will be granted and those Defendants will be dismissed from this action.  The partial motion to dismiss filed by Defendants Flynn and Hicks will also be granted and the conspiracy claims against them asserted in Counts Four and Five will be dismissed.  Counts Four and Five will otherwise go forward.  A separate order will issue.

---

[9] An argument could perhaps be made that Plaintiff's claim falls within the other exception to the intracorporate conspiracy doctrine, i.e., that Flynn and Hicks had some independent and predominate personal stake in their actions.  If Plaintiff had alleged a conspiracy involving John Doe #1 and Flynn, one might infer that the attack was motivated by retaliation for Plaintiff's filing of the complaint against John Doe #1.  Plaintiff, however, provides no factual allegations, whatsoever, about Hicks' conduct or motivation beyond the allegation that he was somehow involved in Plaintiff's arrest.

19

```
                              _____/s/_____
                              William M. Nickerson
                              Senior United States District Judge
```

DATED: November 4, 2014